**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

REFLEX MEDIA, INC.; and CLOVER8 )
INVESTMENTS PTE LTD., )
) Case No.: 2:18-cv-00259-GMN-GWF
Plaintiffs, )
vs. ) **ORDER**
)
SUCCESSFULMATCH.COM *et al.*, )
)
Defendants. )
)

Pending before the Court is the Motion to Dismiss, (ECF No. 23), filed by Defendants SuccessfulMatch.com ("SM.com") and Jason Du ("Du") (collectively "Defendants"). Plaintiffs Reflex Media, Inc. ("Reflex Media") and Clover8 Investments PTE, Ltd. ("Clover8") (collectively "Plaintiffs") filed a Response, (ECF No. 29), and Defendants filed a Reply, (ECF No. 31). For the reasons discussed herein, Defendants' Motion to Dismiss is **GRANTED.**

**I.     BACKGROUND**

Reflex Media operates the following online websites: www.SeekingArrangement.com and www.SeekingMillionaire.com, which both focus on the dating industry. (Compl. ¶ 2, ECF No. 1). Clover8 is the registered owner of three trademarks in relation to the websites: SEEKING ARRANGEMENT, MUTUALLY BENEFICIAL RELATIONSHIPS, and SEEKING MILLIONAIRE (collectively "Trademarks"). (*Id.* ¶ 38). Reflex Media holds the exclusive license to use those Trademarks. (*Id.* ¶ 40).

Defendants operate competing websites in the "sugar daddy" dating industry: www.sugardaddymeet.com and www.MillionaireMatch.com. (*Id.* ¶ 4). Defendants also operate an Affiliate Network Program, where third parties ("affiliates") operate websites that direct

users to Defendant SM.com's websites, in exchange for a small commission. (Mot. Dismiss 4:4–7, ECF No. 23).

Plaintiffs allege that Defendants, through their affiliates, infringed on their Trademarks by claiming a false association with Plaintiffs' businesses. (Compl. ¶ 54). In particular, Plaintiffs claim that Defendants' affiliate websites bear domain names that are similar to Plaintiffs' websites and Trademarks, such as www.seekingarrangement.org and www.seekingarrangements.org. (*Id.* ¶ 8). Plaintiffs accordingly filed their Complaint on February 12, 2018, asserting five causes of action related to trademark infringement, false advertising, and cybersquatting. (*Id.* 25:4, 26:8, 28:1, 29:10, 30:4). On July 9, 2018, Defendants filed the instant Motion to Dismiss, asserting that the Court lacks personal jurisdiction over Defendants in this matter. (Mot. Dismiss 1:25–26).

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Due process requires that a non-resident defendant have minimum contacts with the forum such that the maintenance of the suit will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Minimum contacts can give rise to either general or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." *Id.*

## III. DISCUSSION

Plaintiffs allege that Defendant SM.com conducts its business with Nevada residents through its website, and thus "purposefully avails itself of the privilege of doing business in Nevada." (Compl. ¶ 27, ECF No. 1). Plaintiffs further allege that personal jurisdiction over Defendant Du is appropriate because, as the CEO of SM.com, he directs and conducts commercial contacts with Nevada residents. (*Id.* ¶ 28). In contrast, Defendants argue that the Court lacks personal jurisdiction because Defendants have not purposefully directed their activities toward Nevada. (Mot. Dismiss 1:25–26, 6:4, 7:18, ECF No. 23). Defendants also note that Plaintiffs' claims relate to activities that occurred outside of the forum. (*Id.*).

In addressing this issue, the Court first discusses whether it can assert general personal jurisdiction over Defendants. Because the Court finds that it cannot assert general personal jurisdiction, the Court then turns to the availability of specific personal jurisdiction.

### A. General Jurisdiction

General jurisdiction is an "exacting standard," and requires careful consideration to determine if a defendant's contacts are so substantial, continuous, and systematic to permit the defendant to "answer for any of its activities anywhere in the world." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011). The Ninth Circuit has explicitly held that contacts based on a website, which can be accessed by users in any state, are not sufficient to establish general personal jurisdiction. *Id.* at 1225.

Here, Plaintiffs proffered basis for personal jurisdiction over Defendants are the interactions between Nevada residents and Defendants' website, alongside infringement of the Trademarks. These contacts fall short of the "exacting standard" for general personal jurisdiction, because, even considered collectively, they do not amount to "continuous corporate operations" within Nevada to justify suit on causes of action entirely distinct from the contacts. *See id.* at 1227.

## B. Specific Jurisdiction

Plaintiffs assert that Defendants purposefully directed their business activities at Nevada, and thus may be subject to specific personal jurisdiction in this Court. (Resp. 1:9, ECF No. 29). Specific personal jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Personal jurisdiction must arise out of "contacts that the defendant *himself* creates with the forum State." *Waldon v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted). Further, personal jurisdiction cannot be established from the conduct of a plaintiff or third parties within the forum. *Id.* In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Courts utilize a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Menken*, 503 F.3d at 1057. If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* However, "[i]f the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*

Under the first prong of the specific jurisdiction analysis in a tort case, a court analyzes whether the defendant "purposefully directed his conduct toward a forum state," which "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum . . . ." *Schwarzenegger*, 374 F.3d at 803. The court considers whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* When determining whether the defendant expressly aimed its conduct at the forum state, the court focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284).

Here, Plaintiffs state that SM.com and Du have "transacted online business with Nevada residents, intentionally schemed to infringe the Plaintiffs' Trademarks, and otherwise intentionally caused harm to Nevada resident [Reflex Media]." (Resp. 3:16–18, ECF No. 29). Plaintiffs further argue that Defendants have intentionally directed their activities to Nevada because Defendants admit to operating the Affiliate Network Program, and because Defendants do not deny transacting online business with Nevada residents nor deny any trademark infringement. (*Id.* 3:21–28). Furthermore, Plaintiffs assert that because the domain names of SM.com's affiliates bear names similar to Plaintiffs' own websites, that infringement was intentional, and thus confers jurisdiction to this Court. (*Id.* 3:27–4:6).

Plaintiffs point to *College Source, Inc. v. AcademyOne, Inc.*, as supporting the assertion that where a defendant's website infringes on a trademark for the purpose of competing with a plaintiff, purposeful direction is established in the forum. (Resp. 4:8–16). *See College Source Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011). In *College Source*, the defendant's independent contractor's employees allegedly misused the plaintiff's intellectual property. *Id.* at 1078. The court found that the actions conferred personal jurisdiction. *Id.* at

1080. However, the Supreme Court later held that specific personal jurisdiction cannot be conveyed by third party actions, nor by a defendant's knowledge of the plaintiff's forum connections; and thus, the *College Source* decision is not telling here. *See Walden*, 571 U.S. at 284; *see also Axiom Foods*, 874 F.3d at 1069–70 (holding an e-mail that included fifty-five California based recipients did not establish conduct expressly aimed at the forum state).

Upon review of Plaintiff's jurisdictional support and arguments, Plaintiffs have not carried their burden to show that Defendant SM.com expressly aims its conduct at the forum state of Nevada. SM.com is a website, accessible to anyone with internet access. (Mot. Dismiss 7:4–6). To establish personal jurisdiction in Nevada, Defendants must have done something more to direct their conduct at the forum, rather than just maintaining a website. *See Mavrix Photo Inc.*, 647 F.3d at 1229; *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (holding that global production of a website, without express aiming at a particular forum, does not establish personal jurisdiction). While Plaintiffs allege that Defendants infringed on Plaintiffs' Trademarks, Plaintiffs provide no allegations that Defendants took such action knowing that Plaintiffs' Trademarks belonged to a Nevada company and for the purpose of competing with Plaintiffs through exploiting the forum state. *See College Source Inc.*, 653 F.3d at 1077 (quoting *Love v. Associated Newspapers*, 611 F.3d 601, 609 n.4 (9th Cir. 2010) ("[T]he purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property . . . for the purpose of competing with the plaintiff in the forum."); *Mavrix Photo*, 647 F.3d at 1229–31 (finding sufficient minimum contacts where defendant used plaintiff's copyrighted photos on its celebrity gossip website "as part of its exploitation of the California market for its own commercial gain"). Nor do Plaintiffs provide uncontroverted allegations or facts to show that Defendants aimed their solicitation at Nevada residents. Rather, as shown by exhibits to Plaintiffs' Complaint, consumers initiate contact with Defendants. (Sponsoring Websites, Ex.

3.76 to Compl., ECF No. 1-13); (Successful Match's Service Agreement, ECF No. 1-14). Accordingly, Plaintiffs do not carry their burden to show that Defendants purposefully directed their conduct toward the forum state; and thus, cannot confer specific personal jurisdiction.

Additionally, "foreseeability of injury in a forum 'is not a sufficient benchmark for exercising personal jurisdiction.'" *Axiom*, 874 F.3d at 1070 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Even if Defendants knew their conduct may harm Plaintiffs in Nevada, the harm alone is insufficient to establish personal jurisdiction. Further, Plaintiffs have not demonstrated that SM.com nor Du themselves purposefully directed their conduct toward the forum state of Nevada; Plaintiffs instead allege that the affiliates have. (Comp. ¶ 54). However, under *Walden*, such third-party action is not enough to establish personal jurisdiction. *Walden*, 571 U.S. at 286 ("a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). That is, Plaintiffs have not demonstrated that Defendants directed the affiliates on where and how to solicit business, and the facts in this case show otherwise. (*See* Terms of Use at 2–4, ECF No. 1-3) (discussing the relationship between Defendants and an "Affiliate Dating Partner"); (*see also* Decl. Jason Du ¶ 5, ECF No. 23–1).

Therefore, Plaintiffs have not established that Defendants purposefully directed their conduct toward Nevada to satisfy a finding of specific personal jurisdiction in this Court. The Court will accordingly dismiss Plaintiffs' claims against Defendants without prejudice. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (explaining that dismissals for lack of jurisdiction "should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.") (internal citations omitted).

///

///

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 23), is **GRANTED**, and Plaintiffs' claims against Defendants SuccessfulMatch.com and Jason Du are **DISMISSED without prejudice**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __11__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court