UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REFLEX MEDIA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SUCCESSFULMATCH.COM, et al.,<br><br>Defendants. | Case No. 2:18-cv-00259-GMN-EJY<br><br>**REPORT AND RECOMMENDATION**<br><br>**Re: Application for Entry of Default Judgment Against Defaulting Defendants**<br><br>**(ECF No. 59)** |

Before the Court is Plaintiffs Reflex Media, Inc. and Clover8 Investments PTE. Ltd.'s Application for Entry of Default Judgment Against Defaulting Defendants (the "Application" or "Motion"). ECF No. 59.

**I.    BACKGROUND**

Plaintiffs commenced this action on February 12, 2018, with the filing of the Complaint. ECF No. 1. Plaintiffs allege the following Causes of Action against Defaulting Defendants: Trademark Infringement; False Designations, False Advertising, and Unfair Competition; and, Cybersquatting. On July 26, 2019, executed summonses were returned for Defendants Song Donglin, Tom Fu, Lucy Liu, Phoebe Wu, Wang Yu, and Jessica Zhang (collectively, the "Defaulting Defendants"). ECF No. 55. On September 19, 2019, the Clerk of Court entered default against Defaulting Defendants. ECF No. 58. On April 9, 2020, Plaintiffs filed the instant Motion for Entry of Default Judgment, which they certify they served on Defaulting Defendants. ECF No. 59 at 21.

**II.    LEGAL STANDARDS**

Rule 55(b) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgment when the Clerk of Court previously entered default based upon a defendant's failure to answer and defend. *OCWEN Loan Serv., LLC v. Operture Inc.*, Case No. 2:17-cv-01026-GMN-CWH, 2018 WL 1100904, at \*1 (D. Nev. Feb. 12, 2018). Here, Plaintiffs served the summonses and Complaint upon Defaulting Defendants by email pursuant to Fed. R. Civ. P. 4(f)(3) and the

1

Court's prior Order granting Plaintiffs' Motion to Permit Alternative Method of Service on Foreign Defendants (ECF No. 54) on July 25, 2019. ECF No. 55. Defaulting Defendants made no appearance or attempt to respond to Plaintiffs' Complaint, and the Clerk's Default was entered on September 19, 2019. ECF No. 58.

A defendant's default, however, does not automatically entitle Plaintiffs "to a court-ordered judgment." *PepsiCo. Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002). Rather, the decision to enter a default judgment is left to the discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam). As part of that exercise of discretion, the Ninth Circuit instructs that courts have a duty to ensure they have a proper basis for exercising personal jurisdiction over the absent defendant. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This is because a "judgment entered without personal jurisdiction over the parties is void. To avoid entering a default judgment that can later be successfully attacked as void, the court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *Id*.

The plaintiff bears the burden of demonstrating that a defendant is subject to the presiding court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). However, the "plaintiff need only make a prime facie showing of jurisdictional facts" unless the Court conducts an evidentiary hearing on the matter. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal citation omitted). In such cases, the Court construes factual disputes in the plaintiff's favor when inquiring into "whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (internal brackets and quotation marks omitted). Although the Court must generally accept as true well pleaded factual allegations in a complaint, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (internal citations omitted).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. Because there are no allegations to suggest that Defaulting Defendants' contacts with Nevada or the United States are so substantial, continuous, and systematic to establish general jurisdiction, the Court limits its analysis to whether specific jurisdiction exists. *Goodyear Dunlop Tires Operations,*

*S.A. v. Brown*, 564 U.S. 915, 919 (2015); *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2001) (the standard for general jurisdiction is an "exacting standard").

Determining whether specific jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177, 1180 (9th Cir. 2004). Here, Plaintiffs argue Defaulting Defendants are subject to specific personal jurisdiction in Nevada or, alternatively, in any forum in the United States because Defaulting Defendants have expressly aimed tortious conduct at Nevada and the United States. ECF No. 59 at 17-19. Both Nevada's long-arm statute, NRS § 14.065, and Fed. R. Civ. P. 4(k)(2)—what is often referred to as the federal long-arm statute—require compliance with due process requirements. *Certain-Teed Prods. Corp. v. Second Judicial Dist. Ct.*, 479 P.2d 781, 784 (Nev. 1971) (Nevada long-arm statute); *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (applying Rule 4(k)(2) as a federal long-arm statute), *abrogation recognized on other grounds by Iconlab, Inc. v. Bausch Health Cos., Inc.*, 828 Fed.App'x 363 (9th Cir. 2020) (unpublished). Thus, "under both [jurisdictional] arguments presented by [Plaintiffs], resolution turns on due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

To determine whether exercising personal jurisdiction over a particular defendant would violate due process, the presiding court applies a three-prong "minimum contacts" test that asks whether: "(1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable." *In re W. States Wholesale Natural Gas Litig.*, 605 F.Supp.2d 1118, 1131 (D. Nev. 2009) (internal citation omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). The minimum contacts test focuses on "the defendant's contacts with the forum . . . itself, not the defendant's contacts with persons who reside there. . . . It follows that a defendant's relationship with a plaintiff or third party,

3

standing alone, is an insufficient basis for jurisdiction." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (internal citations and quotation marks omitted).

With respect to the first prong of the minimum contacts test, the Ninth Circuit looks to the nature of the underlying claims to decide whether to apply the purposeful direction or availment analysis. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). A "purposeful availment analysis is used in suits sounding in contract," whereas a "purposeful direction analysis is used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). The allegations in this case sound in tort; therefore, the purposeful direction test applies. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal citation omitted).

Purposeful direction requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal citation and quotation marks omitted). These requirements ensure that a nonresident defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted).

For the reasons below, the Court finds Plaintiffs fail to demonstrate that Defaulting Defendants purposefully directed their tortious conduct towards Nevada. Exercising specific jurisdiction over Defaulting Defendants under Nevada's long-arm statute would therefore offend due process. *Omeluk*, 52 F.3d at 27 ("jurisdiction in the forum would deprive the defendant of due process" if all three requirements of the minimum contacts test is not met). In contrast, unlike the facts applicable to personal jurisdiction based on purposeful direction as to Nevada, Plaintiffs demonstrate Defaulting Defendants purposefully directed their tortious conduct towards the United States generally and, further, that an exercise of personal jurisdiction pursuant to the federal long-arm statute would not offend due process. Moreover, Plaintiffs' claims against Defaulting Defendants arise under federal law, and none of Defaulting Defendants has alleged it is subject to the courts of general jurisdiction of any state. Accordingly, because Plaintiffs satisfy all three elements of Fed. R. Civ. P. 4(k)(2), the Court recommends exercising jurisdiction pursuant to the federal long-arm statute and granting Plaintiffs' Application for Default Judgment.

## III. DISCUSSION

  A. <u>Plaintiffs insufficiently allege that any of Defaulting Defendants purposefully directed its conduct towards the forum State of Nevada; therefore, the Court recommend against an exercise of specific personal jurisdiction on this basis.</u>

The Court finds exercising specific personal jurisdiction over Defaulting Defendants based on purposeful direction toward the State of Nevada would violate due process. *In re W. States Wholesale Natural Gas Litig.*, 605 F.Supp.2d at 1131; *see also Omeluk*, 52 F.3d at 270. Plaintiffs do not sufficiently allege that Defaulting Defendants expressly aimed their tortious conduct towards Nevada.[1] Plaintiffs contend that Defaulting Defendants own and "operate the Infringing Domains as sponsoring websites subject to [Defendants] Successful Match and . . . Du's oversight and control." *Id*. ¶¶ 24, 51. Plaintiffs claim personal jurisdiction exists over Defaulting Defendants in Nevada, based on their information and belief that these Defendants:

> are registered owners of the . . . Infringing Domains . . . which they use, together with Defendants Successful Match [or "SM.com"] and [Jason] Du to solicit and/or otherwise transact business with residents of the United States, *including residents of Nevada. For these reasons, [Defaulting Defendants] have sufficient contacts with the State of Nevada*, and this judicial district generally, such that traditional notions of fair play and substantial justice will not be offended by the Court's exercise of jurisdiction over them for purposes of resolving the disputes set forth in this complaint.

ECF No. 1 ¶ 29 (emphasis added). This allegation loses its persuasiveness as the Court granted Defendants Jason Du and SM.com's Motion to Dismiss (ECF No. 23) on March 11, 2019, finding:

> Plaintiffs have not carried their burden to show that Defendant SM.com expressly aims its conduct at the forum state of Nevada. SM.com is a website, accessible to anyone with internet access. . . . To establish personal jurisdiction in Nevada, Defendants must have done *something more* to direct their conduct at the forum, rather than just maintaining a website. . . . While Plaintiffs allege that Defendants infringed on Plaintiffs' Trademarks,[2] Plaintiffs provide no allegations that Defendants took such action knowing that Plaintiffs' Trademarks belonged to a Nevada company and for the purpose of competing with Plaintiffs through exploiting the forum state. . . . Nor do Plaintiffs provide uncontroverted allegations or facts to shows that Defendants aimed their solicitation at Nevada residents. Rather, as shown by exhibits to Plaintiffs' Complaint, consumers initiate contact

---

[1]  This Report and Recommendation focuses its analysis on the express aiming requirement of the purposeful direction analysis necessary to establish specific personal jurisdiction because Plaintiffs do not establish this element of the purposeful direction test. *Schwarzenegger*, 374 F.3d at 805 ("All three parts of the [purposeful direction] test must be satisfied."); *see also Omeluk*, 52 F.3d at 270.

[2]  As used throughout this Report and Recommendation, "Trademarks" refers to Plaintiffs' "SEEKING ARRANGEMENT," "MUTUALLY BENEFICIAL RELATIONSHIPS," and "SEEKING MILLIONAIRE" marks. ECF No. 1 ¶ 39.

5

1
2
> with Defendants. . . . Accordingly, Plaintiffs do not carry their burden to show that Defendants purposefully directed their conduct towards the forum state; and thus, cannot confer specific personal jurisdiction.

3 ECF No. 48 at 6-7 (internal citations omitted) (emphasis added).

4   This analysis, emphasizing that "'something more' [is] required to indicate that the defendant
5 purposefully directed its activity in a substantial way to the forum state," applies with equal force
6 here. *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (internal citation
7 omitted).  In fact, even "registering someone else's trademark as a domain name and posting a
8 website on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in
9 another." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1988).  "Why?
10 Because [such an] objectionable webpage simply [is] not aimed intentionally at the forum . . .
11 knowing that harm was likely to be caused there, and under the effects doctrine, something more [is]
12 required to indicate that the defendant purposefully directed its activity in a substantial way to the
13 forum." *Pebble Beach Co.*, 453 F.3d at 1157 (internal citation, brackets, and quotation marks
14 omitted).

15   The Court is well aware that the Ninth Circuit held that "individualized targeting" satisfied
16 the express aiming requirement (*Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668,
17 678-79 (9th Cir. 2012), *abrogation recognized by Axiom Foods, Inc.*, 874 F.3d 1064) and, further,
18 that express aiming "can be met where a plaintiff alleges that the defendant individually targeted
19 him by misusing his intellectual property on the defendant's website for the purpose of competing
20 with the plaintiff in the forum." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 n.4 (9th
21 Cir. 2010), *citing Brayton Purcell, LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129-30 (9th Cir.
22 2010), *abrogation recognized by Axiom Foods, Inc.*, 874 F.3d 1064.  The Court is also aware
23 Plaintiffs allege that the "Defaulting Defendants operate various 'sponsoring' websites which each
24 use one or more of [Plaintiffs'] Trademarks (including within the websites' URLs) to direct
25 consumers to one or both of the following websites and dating services." ECF No. 59 at 4 (internal
26 citations omitted).  However, the Ninth Circuit rejected the *Washington Shoe* test stating that in
27 "light of the [Supreme] Court's instructions in *Walden*[ *v. Fiore*, 571 U.S. 277 (2014)], mere
28 satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient to comply with

6

due process." *Axiom Foods, Inc.*, 874 F.3d at 1070. "Moreover, most judges within the Ninth Circuit have determined that the knowledge-of-residency-and-impact approach articulated in *Washington Shoe* cannot be squared with *Walden*, including at least two judges within this District." *Jagen Invs. LLC v. Cannon Fin. Inst., Inc.*, Case No. 2:13-cv-00868-GMN-NJK, 2016 WL 11485896, at *4 (D. Nev. June 27, 2016) (internal citations omitted).

The Supreme Court in *Walden* rejected the Ninth Circuit's conclusion in *Washington Shoe* that the defendants' "knowledge of the plaintiffs' 'strong forum connections,'" plus the "foreseeable harm" the plaintiffs suffered in the forum State of Nevada, comprised sufficient minimum contacts. 571 U.S. at 289. Thus, the Supreme Court "made clear that [a presiding court] must look to the defendant's 'own contacts' with the forum" to satisfy the express aiming requirement, "not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods, Inc.*, 874 F.3d at 1070 (internal citation omitted).

In this case, Plaintiffs allege Defaulting Defendants advertised, marketed, and sold SM.com's products and services throughout Nevada. ECF No. 1 ¶¶ 114-115. With respect to advertising, however, "no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). Indeed, if a "defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *DFSB Kollective Co. v. Bourne*, 897 F.Supp.2d 871, 881 (N.D. Cal. 2012) (internal citation omitted). Rather, there must be something more "to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Cybersell, Inc.*, 130 F.3d at 419. For example, a defendant engaged in something more than merely operating a website by running studio and print advertisements in Las Vegas in competition with the plaintiff. *Rio Props., Inc.*, 284 F.3d at 1020. In that case, the plaintiff "attached to its complaint a copy of [the defendant's] print advertisement from the Nevada edition" of a tabloid newspaper. *Id*. Here, however, Plaintiffs fail to provide any evidence of Defaulting Defendants' advertising expressly aimed towards Nevada.

With respect to business relationships in Nevada, Plaintiffs similarly offer nothing to suggest that Defaulting Defendants encouraged Nevada residents to access the Infringing Domains, and there is no evidence that any part of Defaulting Defendants' businesses were achieved in Nevada. In addition, there is no evidence to suggest that any Nevada resident signed up for the Defaulting Defendants' services, that Defaulting Defendants entered into contracts in Nevada, made sales in Nevada, earned income from Nevada, or sent messages over the Internet to Nevada. On these facts, Plaintiffs have not provided an adequate evidentiary basis to accept their allegations supporting an exercise of specific personal jurisdiction over Defaulting Defendants in Nevada.

Plaintiffs insist the "Court must accept as true [Plaintiffs'] allegation that Defaulting Defendants directed their conduct at . . . Nevada residents, which . . . satisfies the expressly aimed prong." ECF No. 59 at 19 (internal brackets omitted), *citing Curtis v. Shinsachi Pharm. Inc.*, 45 F.Supp.3d 1190, 1198 (C.D. Cal. 2014). Plaintiffs are wrong. The sentence to which Plaintiffs' cite comes immediately before an excerpt from *Curtis* explaining that the plaintiff "alleged that Defendants sold tattoo creams bearings the marks in question in [the forum State of] California[,] sent the allegedly false takedown notices to California[,] and sent the allegedly false takedown notices to California companies, thereby creating the brunt of her lost sales." 45 F.Supp.3d at 1198. These allegations comprise the "something more" missing from Plaintiffs' operative Complaint. *Rio Props., Inc.*, 284 F.3d at 1020 (internal quotation marks omitted).

In sum, Plaintiffs fail to allege facts sufficient to meet the express aiming requirement of the minimum contacts test necessary to create specific personal jurisdiction over Defaulting Defendants in Nevada without offending due process.

      B.    <u>Under Fed. R. Civ. 4(k)(2), Plaintiffs sufficiently allege that Defaulting Defendants purposefully directed their conduct towards the United States</u>.

Plaintiffs argue that Defaulting Defendants purposefully directed their actions towards the United States and, therefore, are subject to any forum in the United States. ECF No. 59 at 17. "This ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2)," which is "commonly referred to as the federal long-arm statute." *Pebble Beach Co.*, 453 F.3d at 1158-59 (internal citations omitted). A plaintiff

must satisfy all three elements of Fed. R. Civ. P. 4(k)(2) to invoke the federal long-arm statute: "First, the claim against the defendant must arise under federal law. . . . Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Pebble Beach Co.*, 453 F.3d at 1159 (internal citations omitted). As Plaintiffs point out, the first element is satisfied because their claims arise under the federal Lanham Act. ECF No. 1 ¶ 26. The second element is satisfied because none of Defaulting Defendants has "alleged that it is subject to the courts of general jurisdiction in any state." *Holland Am. Line Inc.*, 485 F.3d at 461; *see also* ECF No. 59 at 18.

With respect to the third element, the "due process analysis under the third part of the federal long-arm statute is nearly identical to traditional personal jurisdiction analysis, . . . which requires:

> (1) The non-resident defendant must purposefully direct his activitie*s* or consummate some transaction with the forum or resident thereof . . . ; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Hydentra HLP Int. Limited v. Sagan Limited*, 783 Fed.App'x 663, 665 (9th Cir. 2019) (internal citations, emphasis, and quotation marks omitted) (unpublished).

As stated above, the "purposeful direction analysis is comprised of a three-parts 'effects' test and requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. (internal citation and quotation marks omitted). Unlike the facts applicable to personal jurisdiction based on purposeful direction to Nevada, Plaintiffs satisfy all three elements of the purposeful direction analysis when applied to the United States.

The first prong of this test is construed as "referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Construing the allegation as applied to the United States generally, the Court finds Plaintiffs demonstrate that Defaulting Defendants committed sufficient intentional acts by operating the "Infringing Domains as sponsoring websites." ECF No. 1 ¶ 51; *see also Pebble Beach Co.*, 453 F.3d at 1156 (operating a website was an intentional act where the claim arose out of the website name's infringement of a trademark); *Datatech Enters. LLC v. FF Magnat*

*Ltd.*, Case No. C 12-04500 CRB, 2012 WL 4068624, at *2 (N.D. Cal. Sept. 14, 2012) ("The intentional act element is broadly construed, and can be met by the mere operation of a website") (internal citation omitted).

With respect to the second prong of the effects test, Plaintiffs support the express aiming element by alleging Defaulting Defendants advertise, market, and distribute products and services throughout the country. ECF No. 1 ¶¶ 114-115. *Universal Music MGB NA LLC v. Quantum Music Works, Inc.*, 769 Fed.App'x 445, 446 (9th Cir. 2019) (internal brackets, citations, and quotation marks omitted) (unpublished) (running an "English-language website which allow[s] and promote[s] the transaction of business within the United States, . . . and encourage[s] users to enter into contracts . . . that involve the knowing and repeated transmission of computer files over the Internet" suggests Defaulting Defendants expressly aimed their conduct towards the United States as a whole). Further, the Terms of Use Defaulting Defendants entered into with SM.com provides that their "agreement shall be governed by and construed in accordance with the laws of the state of California, U.S.A." and that "any and all such disputes shall be resolved by submission to binding arbitration in San Francisco, California U.S.A." ECF No. 1-3 at 8. "[C]hoice of law provisions may be considered in combination with other contacts to determine if defendant established minimum contacts." *Fujitsu-ICL Sys., Inc. v. Efmark Serv. Co. of Ill., Inc.*, Case No. 00-CV-0777W(LSP), 2000 WL 1409760, at *5 (S.D. Cal. June 29, 2000).

Finally, with regards to whether Defaulting Defendants knew harm would likely be suffered in the United States, Plaintiffs claim that "where the infringement of intellectual property is at issue, it is foreseeable that the loss will be inflicted both in the forum where the infringement took place… and where the [rights] holder has its principal place of business." ECF No. 59 at 19 (internal brackets and quotation marks omitted), *citing in part Washington Shoe Co.*, 704 F.3d at 679. This allegation is insufficient to establish an exercise of jurisdiction under Rule 4(k) is proper in the U.S. District Court for the District of Nevada. *Burger King Corp.*, 471 U.S. at 474 (internal citation and quotation marks omitted) ("the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum … are such that he should reasonably anticipate being haled into court there"). However, Plaintiffs allege something more when they contend Defaulting

Defendants ran advertising campaigns targeting United States residents at the behest of SM.com. ECF No. 1 ¶¶ 114-115. This allegation, construed as the Court must in Plaintiffs' favor, adds the "something more" the Supreme Court requires to establish Defaulting Defendants caused harm they knew would likely be felt in the United States. *Rio Props., Inc.*, 284 F.3d at 1020.

The second requirement of the minimum contacts test is met because Plaintiffs' claims arise from Defaulting Defendants' activities related to the United States. That is, Defaulting Defendants' purported "registration of [Plaintiffs'] trademarks as [the Defendants'] own domain names on the Internet had the effect of injuring" Plaintiffs in the United States. *Panavision Intern., L.P.*, 141 F.3d at 1322. "But for [Defaulting Defendants'] conduct, this injury would not have occurred." *Id*. Therefore, Plaintiffs' claims arise out of Defaulting Defendants' United States-related activities.

The third requirement of the minimum contacts test is satisfied as exercising specific personal jurisdiction over Defaulting Defendants in this case would not offend traditional notions of fair play and substantial justice. "At this stage, the burden is on [Defaulting Defendants] to present a 'compelling case' that such exercise of jurisdiction would be unreasonable and unjust. . . . Because [Defaulting Defendants have not appeared and] made no such argument, [they have] not met [their] burden and no compelling case has been demonstrated against the exercise of jurisdiction." *Universal Music MGB NA LLC*, 769 Fed.App'x at 447.

Considering the above, Plaintiffs satisfy all three requirements of the due process analysis under the third element of the federal long-arm statute. *Hydentra HLP Int. Limited*, 783 Fed.App'x at 665. As previously stated, Plaintiffs also satisfy the first element of Rule 4(k)(2) because their claims arise under the federal Lanham Act, and meet the second element because none of Defaulting Defendants has alleged that it is subject to the courts of general jurisdiction in any state. Accordingly, because Plaintiffs meet all three elements of Rule 4(k)(2) authorizing a "district court's exercise of personal jurisdiction over a defendant where: i) the plaintiff's claim arises from federal law; ii) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction; and iii) the district court's exercise of personal jurisdiction comports with due process," the Court recommends exercising personal jurisdiction in Nevada pursuant to the federal long-arm statute. *Universal Music MGB NA LLC*, 769 Fed.App'x at 445.

  C. <u>The Court recommends entering default judgment in favor of Defaulting Defendants</u>.

There are seven factors that a lower court, in its discretion, may consider when deciding whether to grant default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), *citing* 6 MOORE'S FEDERAL PRACTICE § 55-05, at 55-24 to 55-26. These "*Eitel* factors" include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[3]

*Id*. (internal citation omitted). The Court examines each of these factors below.

    1. *Factor One – The possibility of prejudice to Plaintiffs*

The Clerk of Court properly entered default against Defaulting Defendants who failed to appear or respond to Plaintiffs' Complaint. ECF No. 58. Plaintiffs also filed a Certificate of Service indicating they served Defaulting Defendants with their Motion for Default Judgment. ECF No. 59 at 21. Finally, the Court finds persuasive Plaintiffs' assertions that Plaintiffs will be "unable to redress the wrongs perpetrated against [them] by Defaulting Defendants unless this Court enters a default judgment against them." ECF No. 59 at 5 (internal alteration omitted). Thus, the first *Eitel* factor weighs in favor of granting Plaintiffs' Motion for Default Judgment.

    2. *Factors Two, Three, and Five – The merits of Plaintiffs' substantive claims, the sufficiency of the Complaint, and the possibility of a dispute concerning material facts*

Because "default has been entered by the court clerk, the well-pleaded factual allegations of [Plaintiffs' C]omplaint are taken as true, except for those allegations relating to damages." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987); *see also* Fed. R. Civ. P. 8(b)(6). Under the well pleaded complaint rule, Plaintiffs sufficiently state meritorious claims for recovery of damages from Defendants (the second and third *Eitel* factors) as explained below.

With respect to Plaintiffs' trademark infringement claim, Plaintiffs must demonstrate that, without their consent, Defaulting Defendants "used in commerce a reproduction or copy of a

---

[3] In addition to these seven factors, the Court has the duty to ensure Defendants were properly served and are properly before the Court. *DFSB Kollective Co.*, 897 F.Supp.2d at 877-78. Here, as stated, the Court finds that summonses were properly issued, Defaulting Defendants were properly served, Defaulting Defendants failed to appear or answer the Complaint, and that default of Defaulting Defendants was properly entered by the Clerk of Court.

registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003), *citing* 15 U.S.C. § 1114(a)(1). To that end, the Complaint identifies Plaintiffs' ownership of and exclusive right to use the incontestable and registered trademarks, the extent to which Plaintiffs have used the marks, and the fame of the marks. ECF No. 1 ¶¶ 31-42, 96-97. Plaintiffs also contend Defaulting Defendants used the mark in interstate commerce without Plaintiffs' consent. *Id.* ¶¶ 58, 79, 86-87. Plaintiffs further allege that Defaulting Defendants' use of Plaintiffs' Trademarks is likely to cause confusion or mistake or to deceive customers and has thereby damaged Plaintiffs. *Id.* ¶¶ 8, 62, 65, 70, 79-80, 91, 101.

A false designation of original claim requires Plaintiffs to establish that Defaulting Defendants "used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of his goods by Plaintiff." *Philip Morris USA, Inc.*, 219 F.R.D. at 499, *citing* 15 U.S.C. § 1125(a)(1)(A). As previously stated, Defaulting Defendants' use of Plaintiffs' Trademarks is likely to cause confusion, mistake or deception as to the affiliation, connection or association between Plaintiffs and these Defendants. ECF No. 1 ¶¶ 8, 62, 65, 70, 79-80, 91, 101. And, Plaintiffs did not authorize Defaulting Defendants to use the Trademarks in commerce to promote their business. *Id.* ¶¶ 58, 79, 86-87.

Finally, a cybersquatting claim requires Plaintiffs to establish that Defaulting Defendants have a "bad faith intent to profit from [the Trademarks]" and "registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to that" Trademark. 15 U.S.C. § 1125(d)(1)(A). Plaintiffs sufficiently allege that Defaulting Defendants had a bad faith intent to profit off of the Trademarks, and that Defaulting Defendants' use of Plaintiffs' Trademarks is likely to cause confusion or mistake or to deceive customers, thereby damaging Plaintiffs. *Id.* ¶¶ 8, 62, 65, 70, 79-80, 91, 100-101.

Based on the above, the Court finds the second and third *Eitel* factors weigh in favor of default as the Court must accept Plaintiffs' well pleaded allegations as true based on Defaulting Defendants' failure to answer or otherwise respond. Fed. R. Civ. P. 8(b)(6).

The fifth *Eitel* factor weighs in favor of default judgment where there is no possibility of a dispute about material facts. 782 F.2d at 1471-72. Because "this Court takes all allegations in a well pleaded complaint as true after the Clerk enters default judgement, there is no likelihood that any genuine issue of material facts exists in this case." *Primerica Life Ins. Co. v. Briggs*, Case No. 2:14-cv-02146-GMN-PAL, 2016 WL 1294411, at *4 (D. Nev. Mar. 18, 2016) (internal citation omitted). In addition, "[t]rademark and trade dress infringement are both strict liability claims, thereby limiting the scope of factual disputes." *Herman Miller Inc. v. Alphaville Design Inc.*, Case No. C 08-03437 WHA, 2009 WL 3429739, at *8 (N.D. Cal. Oct. 22, 2009).

Considering the foregoing, the second, third, and fifth *Eitel* factors favor entry of default judgement against Defaulting Defendants.

     3.  *Factor Six – Whether the default was due to excusable neglect*

Defaulting Defendants failed to appear or participate in any manner in this dispute. Defaulting Defendants have not argued, nor is there any evidence to suggest, that their failure to participate is the result of excusable neglect. Thus, this factor weighs in favor of granting Plaintiffs' Motion. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (finding default was not due to excusable neglect because the defendant was "properly served, yet ignored the deadline to respond to the complaint" and gave no "credible, good faith explanation for its apparent bad faith intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process") (internal citation and quotation marks omitted).

     4.  *Factors Four and Seven – The sum of money at stake in the action and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits*

The fourth *Eitel* factor weighs against a default judgment when there is a substantial amount of money involved. 782 F.2d at 1472. In evaluating this factor, the Court must "compare the amount of money at stake to the seriousness of the defendant's conduct." *Primerica Life Ins. Co.*, 2016 WL 1294411, at *4.

Here, Plaintiffs seek a total of $20,900,000 in statutory damages from the Defaulting Defendants pursuant to the Lanham Act, as well as a permanent injunction. ECF No. 59 ¶ 7; *see also* 15 U.S.C. §§ 1117(c) and (d). Whether the Defaulting Defendants can satisfy the judgment is unknown, but deterring others from acting in the same manner as these Defendants weighs in favor of an award of substantial damages. Finally, although "cases should be decided upon their merits whenever reasonably possible" (*id*.), here, because the Defaulting Defendants have "failed to respond to anything at all in this action, it is not possible to decide this case on its merits, so [the seventh *Eitel*] factor, too, weighs in favor of default judgment." *LHF Prods., Inc. v. Boughton*, 299 F.Supp.3d 1104, 1116 (D. Nev. 2017).

As every *Eitel* factor weighs in favor of entering default judgment, the Court therefore recommends granting Plaintiffs' Motion for Default Judgment (ECF No. 59).

D. <u>The Court recommends granting Plaintiffs' request for permanent injunctive relief</u>.

The Lanham Act gives the Court "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable to prevent the violation" of a mark holder's rights. *Philip Morris USA, Inc.*, 219 F.R.D. at 502, *citing in part* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and[,] (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Generally, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

Plaintiffs request the Court issue a permanent injunction enjoining the Defaulting Defendants from:

1.  Selling, offering for sale[,] distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble or are confusingly similar to the Trademarks as to be likely to cause confusion, mistake or deception, on or in connection with any goods or services that are not authorized by or for Plaintiffs;
2.  Using the Trademarks, any other marks[,] or domain names confusingly similar to those marks alone or in combination with any other letters, words, letter strings, phrases or designs, or the look and feel of [Plaintiffs'] Websites in commerce or in connection with any goods or services;
3.  Using any word, term, name, symbol, or device[,] or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of [the Defaulting] Defendants or their goods with Plaintiffs['], or as to the origin of [the Defaulting] Defendants' goods or services, or any false designation of origin, false or misleading description or representation of fact;
4.  Further infringing on the rights of Plaintiffs in and to any of its Trademarks, trade dress, products[,] and services or otherwise damaging Plaintiffs' goodwill or business reputations;
5.  Operating the Review Websites without explicitly disclosing their affiliation with Successful Match;
6.  Otherwise competing unfairly with Plaintiffs in any manner; and[,]
7.  Continuing to perform in any manner whatsoever any of the other acts complained of in this complaint.

ECF No. 59 at 15. Plaintiffs also request the Court order the Defaulting Defendants to cancel and/or transfer the offending domain names to Plaintiffs. *Id*. at 16. Finally, Plaintiffs ask the Court to direct the Defaulting Defendants to comply with the injunction and give notice of compliance within "forty-five days of having the default judgment served upon them" in accordance with the Court's Order granting Plaintiffs' Motion to Permit Alternative Method of Service on Foreign Defendants at ECF No. 54. *Id*.

Plaintiffs satisfy the elements necessary to demonstrate permanent injunctive relief is proper. Plaintiffs demonstrate they: (1) are likely to suffer irreparable injury absent injunctive relief because Defaulting Defendants' trademark infringement is likely to continue; (2) "[c]onsumer confusion and potential dissatisfaction" with Defaulting Defendant's Infringing Domains are likely to have a negative effect on Plaintiffs' reputation and goodwill (*Teller v. Dogge*, Case No. 2:12-CV-591 JCM (GWF), 2014 WL 4929413, at *5 (D. Nev. Sept. 30, 2014) (internal citation omitted); (3) monetary damages are inadequate because Defaulting Defendants have given no indication that they will stop infringing in the future (*Adobe Sys. Inc. v. Brooks*, Case No. 5:08-cv-04044 RMW, 2009 WL 593343, at *3 (N.D. Cal. Mar. 5, 2009); and (4) the balance of hardships weighs in favor of Plaintiffs because they have "expended a substantial amount of time and money in building . . . a public

persona . . . that [is] recognizable . . . worldwide," and any harm to Defaulting Defendants in forcing them to "comply with the requirements of the law is outweighed by [Plaintiffs'] efforts to protect [their] . . . trademarked persona from consumer confusion." *Teller*, 2014 WL 4929413, at *5; *see also* ECF No. 1 ¶ 41   Moreover, the public interest is served with a permanent injunction when holders of a mark are protected against "increased infringement." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1222 (C.D. Cal. 2007) (internal citations omitted).  The Court therefore finds a permanent injunction appropriate to enjoin Defaulting Defendants from further infringement.

E.  The Court recommends awarding Plaintiffs $20,900,000 in statutory damages.

For trademark actions involving the use of a counterfeit mark, a plaintiff may elect to recover statutory damages at any time before final judgment is entered.[4]   15 U.S.C. § 1117(c).  In its discretion, a court can award between $1,000 and $200,000 "per counterfeit mark . . . , as the court considers just." *Id*.  A court may also award enhanced damages of up to $2,000,000 per counterfeit mark on a finding of willful infringement. *Id*.  For cyberpiracy actions, a court may award damages of an amount between $1,000 and $100,000 for each pirated domain name, "as the court considers just." 15 U.S.C. § 1117(d).

Plaintiffs submit that a total award of statutory damages of $20,900,000 is appropriate to compensate them for the Defaulting Defendants' "willful infringement of varying combinations of three of [Plaintiffs'] registered trademarks on nine different websites for benefit of two separate dating services." ECF No. 59 at 11.  Plaintiffs request $2,000,000 in maximum enhanced statutory damages for each counterfeit mark ($2,000,000 each against Defendants Donglin, Fu, Liu, and Yu each; $4,000,000 against Zhang; and, $8,000,000 against Wu), and $100,000 in statutory damages for each pirated domain name ($100,000 against Defendants Donglin, Fu, Liu, Yu, and Zhang each, plus $400,000 against Defendant Wu).  *Id*. at 13.

In its discretion, the Court finds these damages reasonable based on Defaulting Defendants failure to participate in this litigation despite being served; the egregiousness of the wrongful

---

[4]   Plaintiffs state they will file a motion after final judgment seeking attorneys' fees and costs after final judgment is entered.  ECF No. 59 at 16-17.

behavior; and, the nature of the wrongfulness. The Court acknowledges that this is an extraordinary award; however, willfulness is properly inferred from Defaulting Defendants' failure to defend. *Philip Morris USA, Inc.*, 219 F.R.D. at 500.

With respect to Plaintiffs' cyberpiracy claims, the Court agrees with Plaintiffs that a statutory award of $100,000 for each pirated domain name appropriate, for a total of $900,000 ($100,000 against Defendants Donglin, Fu, Liu, Yu, and Zhang each, plus $400,000 against Defendant Wu). "These damages, coupled with the permanent injunction granted against [the Defaulting Defendants], will adequately serve the purpose of deterrence and will help defray any additional costs associated with attempting to enforce the judgement in China." *Herman Miller Inc.*, 2009 WL 3429739, at *10.

## IV. RECOMMENDATIONS

Accordingly,

IT IS HEREBY RECOMMENDED that jurisdiction be properly exercised over Defaulting Defendants under Federal Rule of Civil Procedure 4(k)(2).

IT IS FURTHER RECOMMENDED that Plaintiffs' Application for Entry of Default Judgment Against Defaulting Defendants (ECF No. 59) be GRANTED.

IT IS FURTHER RECOMMENDED that default judgment be entered as to Defendants Song Donglin, Tom Fu, Lucy Liu, Phoebe Wu, Wang Yu, and Jessica Zhang.

IT IS FURTHER RECOMMENDED that a permanent injunction issue as to Defendants Song Donglin, Tom Fu, Lucy Liu, Phoebe Wu, Wang Yu, and Jessica Zhang, enjoining these Defendants from:

1. Selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble or are confusingly similar to the Trademarks as to be likely to cause confusion, mistake or deception, on or in connection with any goods or services that are not authorized by or for Plaintiffs;
2. Using the Trademarks, any other marks, or domain names confusingly similar to those marks alone or in combination with any other letters, words, letter strings, phrases or designs, or the look and feel of Plaintiffs' Websites in commerce or in connection with any goods or services;
3. Using any word, term, name, symbol, or device, or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of Defendants Song Donglin, Tom Fu, Lucy Liu, Phoebe Wu, Wang Yu, and Jessica Zhang or their goods with Plaintiffs', or

as to the origin of Defendants Song Donglin, Tom Fu, Lucy Liu, Phoebe Wu, Wang Yu, and Jessica Zhang's goods or services, or any false designation of origin, false or misleading description or representation of fact;

4. Further infringing on the rights of Plaintiffs in and to any of its Trademarks, trade dress, products, and services or otherwise damaging Plaintiffs' goodwill or business reputations;
5. Operating the Review Websites without explicitly disclosing their affiliation with Successful Match;
6. Otherwise competing unfairly with Plaintiffs in any manner; and,
7. Continuing to perform in any manner whatsoever any of the other acts complained of in this complaint.

IT IS FURTHER RECOMMENDED that Defendants Song Donglin, Tom Fu, Lucy Liu, Phoebe Wu, Wang Yu, and Jessica Zhang and/or registrars be ordered to cancel and/or transfer the following URLs to Plaintiffs Reflex Media, Inc. and/or Clover 8 Investments PTE. Ltd.:

1. www.seekingarrangements.org;
2. www.seekamillionaire.com;
3. www.seekingarrangementaustralia.com;
4. www.seeekingarrangementdatingwebsite.com;
5. www.seeking-arrangement-com.com;
6. www.seekingarrangementloginin.com;
7. www.seekingarrangementsreviews.com;
8. www.seekingarrangementdatingsite.com; and,
9. www.seekarrangement.com.

IT IS FURTHER RECOMMENDED that Plaintiffs be awarded a total of $20,900,000 in statutory damages, as calculated below:

a. $2,000,000 for use of one counterfeit mark and $100,000 for pirating one domain name against Defendant Song Donglin;
b. $2,000,000 for use of one counterfeit mark and $100,000 for pirating one domain name against Defendant Tom Fu;
c. $2,000,000 for use of one counterfeit mark and $100,000 for pirating one domain name against Defendant Lucy Liu;
d. $8,000,000 for use of four counterfeit marks and $400,000 for pirating four domain names against Defendant Phoebe Wu;
e. $2,000,000 for use of one counterfeit mark and $100,000 for pirating one domain name against Defendant Wang Yu; and,
f. $4,000,000 for use of two counterfeit marks and $100,000 for pirating one domain name against Defendant Jessica Zhang.

IT IS FURTHER RECOMMENDED that Defendants Song Donglin, Tom Fu, Lucy Liu, Phoebe Wu, Wang Yu, and Jessica Zhang be required to comply with the permanent injunction and give notice of such compliance within **60 (sixty) court days** of having the default judgment served upon them by email.

DATED THIS 29th day of December, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).